UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCOTT PATRICK DEVLIN,

        Plaintiff,

                                      Case No. 21-cv-1309-pp

   v.

KILOLO KIJAKAZI,

        Defendant.

**ORDER REVERSING COMMISSIONER'S DECISION AND REMANDING FOR FURTHER PROCEEDING UNDER SENTENCE FOUR OF 42 U.S.C. §405(g)**

On November 15, 2021, the plaintiff appealed an administrative law judge's final administrative decision finding him not "disabled" within the meaning of the Social Security Act. Dkt. No. 1. The Social Security Administration's Appeals Council denied review, rendering the administrative law judge's decision the final decision of the Commissioner. Under sentence four of 42 U.S.C. §405(g), the court will reverse the Commissioner's decision and remand the case for further proceedings consistent with this decision.

**I.    Procedural History and the ALJ's Decision**

On April 11, 2019, the plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. Dkt. No. 13-3 at 12. In both applications, the plaintiff alleged a disability onset date of July 10, 2014. Id. The Social Security Administration (SSA) initially denied the plaintiff's claims on July 3, 2019, dkt. no. 13-5 at 2, and denied them upon reconsideration on November 12, 2019, id. at 9, 14.

1

On December 30, 2019, the plaintiff filed a request for a hearing before an administrative law judge (ALJ). Dkt. No. 13-5 at 19–20. On September 9, 2020, he appeared at a telephone hearing,[1] representing himself. Dkt. No. 13-3 at 12, 31, 35–36. Vocational expert (VE) Michael Stern also was present. Id. at 12, 30. On April 27, 2021, ALJ Arman Rouf issued a decision, finding that the plaintiff was not "disabled" as defined by the Social Security Act. Dkt. No. 13-3 at 13, 24. The ALJ found that the plaintiff, born June 16, 1970, was forty-four years old on the alleged disability onset date (fifty years old at the time of the hearing) and "has at least a high school education." Id. at 23. The ALJ found that the plaintiff "has not engaged in substantial gainful activity since July 10, 2014, the alleged onset date." Id. at 15 (citing 20 CFR §§404.1571 et seq., and 416.971 et seq.). The ALJ also found, based on the VE's testimony, that the plaintiff has past relevant work as an Automobile Detailer and Assembler and that the plaintiff is unable to perform any past relevant work. Id. at 22–23 (citing 20 CFR §§404.1565 and 416.965). And the ALJ found that the plaintiff's "earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2022." Id. at 13, 15.

To be entitled to benefits under the Social Security Act, a claimant must be "aged, blind, or disabled." 42 U.S.C. §1382(a)(1). The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Id. at §1382c(a)(3)(A). The impairment must be of "such severity that [the claimant] is not only unable to

---

[1] The ALJ's decision stated that the hearing was held via telephone "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." Dkt. No. 13-3 at 12.

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at §1382c(a)(3)(B). In evaluating a claim for disability benefits, administrative law judges (ALJs) follow a five-step, sequential process. Apke v. Saul, 817 F. App'x 252, 255 (7th Cir. 2020); Fetting v. Kijakazi, 62 F.4th 332, 336 (7th Cir. 2023). The following chart summarizes the ALJ's findings at each step regarding the plaintiff's Title XVI claim:

| STEP | FINDINGS |
|------|----------|
| Step One: Is the claimant engaged in substantial gainful activity? | The claimant has not engaged in substantial gainful activity since July 10, 2014, the alleged onset date. |
| Step Two: Is the impairment or combination of impairments severe—does it significantly limit the claimant's mental or physical ability to do basic work activities? | The claimant has the following severe impairments: chronic pain syndrome; myofascial pain syndrome; dysfunction of the right upper extremity; post-concussion syndrome with headaches; and depression. |
| Step Three: Does the impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity? | The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. |
| Step Four: Does the claimant's residual functional capacity allow the claimant to perform past relevant work? | The claimant is unable to perform any past relevant work.

The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds; never crawl; never reach overhead with the right (dominant) upper extremity; frequently reach in all other directions with the right upper extremity; and frequently handle, finger, and feel with |

3

|  | the right upper extremity. He can tolerate occasional exposure to vibration and must avoid unprotected heights, moving mechanical parts, and operating a motor vehicle. He can tolerate moderate noise in a work environment and lighting no brighter than in a typical office environment. He can perform simple and routine tasks, maintain attention and concentration for two-hour segments, make simple work-related decisions, and tolerate occasional changes in a routine work setting. He can frequently interact with supervisors and co-workers and occasionally interact with the public. |
|---|---|
| Step Five: Can the claimant perform any other work existing in significant numbers in the national economy? | Merchandise Marker, Collator Operator and Router |

See Dkt. No. 13-3 at 15, 16, 18, 22, 23.[2] Although the decision did not mention it, the ALJ was forced to abruptly end the hearing before the VE's testimony was finished, because the claimant was using profanity and yelling. See Dkt. No. 13-3 at 66–67 (hearing transcript). After the hearing, the ALJ requested a vocational interrogatory, dkt. no. 13-7 at 66, and the ALJ's decision referred to the VE's responses in this interrogatory, id. at 76–83.

On April 27, 2021, the ALJ denied the plaintiff's Title XVI claim and concluded that the plaintiff had "not been under a disability, as defined in the

---

[2] The claimant bears the burden of proof at steps one through four; at step five, the burden shifts to the Commissioner. Ghiselli v. Colvin, 837 F.3d 771, 776 (7th Cir. 2016) (citing Butera v. Apfel, 173 F.3d 1049, 1054 (7th Cir. 1999)).

Social Security Act, from July 10, 2014,[3] through the date of this decision." Dkt. No. 13-3 at 24. On September 17, 2021, the Appeals Council denied review. Id. at 2.

As for the plaintiff's Title II claim, the ALJ noted that the plaintiff had filed a prior Title II application and treated the plaintiff's claim as a request to reopen the prior claim:

> Additionally, the undersigned notes that there was a prior Title II application with an initial determination on December 12, 2014 and an unfavorable decision issued by an Administrative Law Judge on August 9, 2017 (B9A). As the alleged onset date in this matter is July 10, 2014, this constitutes an implied request to reopen. However, the undersigned finds no basis for reopening the prior decision in this matter, as there is no new and material evidence or other basis for reopening the prior decision. Additionally, the undersigned finds that the prior unfavorable decision is final and binding on the issue of disability during the previously adjudicated period.

Dkt. No. 13-3 at 12–13 (citing Dkt. No. 13-4 at 52–66). The ALJ therefore did not address the plaintiff's Title II claim.

On November 15, 2021, the plaintiff—again representing himself— appealed, seeking this court's review of the final administrative decision. Dkt. No. 1. On April 7, 2022, the plaintiff requested an extension of time to file his brief, dkt. no. 17, which the court granted, dkt. no. 18. On June 6, 2022, the plaintiff filed his brief and asked the court to award him a favorable decision and back pay. Dkt. No. 19 at 5. On July 18, 2022, the Commissioner requested an extension of time to file her brief, dkt. no. 20, and indicated that the plaintiff "was not contacted about this motion in advance because he is proceeding pro

---

[3] It is not clear why the ALJ made a finding regarding the period prior to April 11, 2019. "[O]ne can collect SSI under Title XI only as of the date of application, regardless of how long one may have suffered from a particular infirmity[.]" Perkins v. Chater, 107 F.3d 1290, 1295 (7th Cir. 1997) (citing 20 C.F.R. §416.335).

5

se," id. at ¶3; Dkt. No. 21 at ¶6. In a text-only order dated August 9, 2022, the court indicated that it had given the plaintiff time to respond to the Commissioner's motion for an extension but that he had not done so. Dkt. No. 23. The court granted the Commissioner's request for an extension. Id.

On August 17, 2022, the Commissioner filed a second motion for an extension of time to file her response brief, designating the motion as "unopposed." Dkt. No. 24. The Commissioner indicated that "[i]n a phone call on August 15, 2022, Plaintiff informed counsel for defendant that he had no objection to the requested extension." Id. at ¶3. See also Dkt. No. 25 at ¶10 ("During our August 15, 2022 phone call, Mr. Devlin stated that he was 'okay' with a 30-day extension of time."). In her declaration, counsel for the Commissioner explained that the agency had determined the case should be partially remanded and that she was requesting a thirty-day extension for time "to prepare an appropriate response" "[t]o allow the parties time to negotiate a stipulated remand." Id. at ¶¶4–8. On August 18, the court granted the Commissioner's second motion for an extension of time to file her brief, noting that the motion was unopposed. Dkt. No. 27.

The same day—August 18—the court received from the plaintiff a response to the Commissioner's *first* request for an extension, explaining that he had not realized at the time that he was supposed to respond. Dkt. No. 28. The plaintiff indicated that he would have objected to the Commissioner's first request for an extension:

> If I wasn't so confused and not being able to think clearly I would have said that social security has dragged this on long enough, it's been over 6 years[4] without any income at all. Because social security

4 Although the plaintiff filed his current claim in April 2019 and filed this response in August 2022, the court suspects that the plaintiff was referring to

6

has been blatantly and obviously treating me unfairly by continuing to deny my case without social security having any substantial evidence to deny my claim when I have been suffering and have the evidence of 6 years of multiple doctors and specialist that actually treated me in person and all say the same thing that I wouldn't be able to perform in a job environment . so to that I am truly sorry for not responding to your letter because every single day that passes by without me receiving my benefits is having a negative effect on my ability to even keep living the pathetic life that I do have.

Id.

On August 26, the court received from the plaintiff a response to the Commissioner's *second* request for an extension, indicating that he had not agreed to an extension during the August 15 phone call with opposing counsel and expressing concern with how long the process has taken:

I looked over the paperwork multiple times and I do not agree with what the defendant wrote about our conversation on August 15, 2022. . . . The defendants lawyer contacted me thru a telephone call on August 15 and said that she wanted to send my case back to a administrative law judge, I mentioned that the judge that has the case now should rule over this case now instead of waisting [sic] more time sending it back to social security . . . . I also never agreed or consented to grant her a second request for extension of time like she stated in the defendants letter. Social security have dragged this out long enough already and have been denying my benefits that I do desperately need to try and live. Especially when social security has been wrongfully denying my case for the last 9 years already when there's clearly something wrong with social security's decision on my case . . . .
. . .

So I never agreed to send my case back to the same people that have been so blatantly dismissing and denying my case all along, or to give them more time again when every day that I don't receive my benefits has a negative effect on my life.

---

the fact that he first filed a claim (a Title II claim) in 2014. See Dkt. No. 13-4 at 55.

Dkt. No. 29. The plaintiff asked that this court decide his case rather than sending it back to the ALJ and asked to be awarded back pay dating back to his 2014 Title II application:

> So I would like to see if I could request that this case be handled by this Court and judge Pamela Pepper and if this Court can either decide this case with a favorable decision and full benefits with back pay going back to 2014 when I became unable to work from my condition because clearly my health has never improved, instead it just keeps declining, it is obvious that my case has been wrongfully denied. . . . So I would like to know if it would be possible to set 2014 when I first opened my disability claim as the back pay date? and not 2019 when I was forced to start a new claim because my disability advocate binder and binder filed bankruptcy and never finished my case and I lost the first time. . . . So I am asking this Court to award me my benefits with a favorable decision and full back pay to 2014 at disability onset.

Id.

On August 31, 2022, the Commissioner filed her brief. Dkt. No. 30. The plaintiff did not file a reply brief. The court scheduled a telephone hearing for May 30, 2023. Dkt. No. 31. Between the date the court set the hearing, however, and the date the hearing was to take place, the court changed the phone number by which the partiers were to appear due to a switch in the court's phone carrier, but there is no notation on the docket indicating that the court notified the plaintiff of this change by mail. See Dkt. No. 32. The court began the hearing at the scheduled time on May 30, but noted that the plaintiff was not on the call. The court's staff called the telephone number listed on the docket for the plaintiff, but got his voice mail. The court advised counsel for the Commissioner that the court would issue a written decision remanding the case to the ALJ. See Dkt. Nos. 33 (audio), 34 (court minutes). In a post-hearing phone call between the plaintiff and court staff, the plaintiff explained that he had attempted to appear by calling the old number. Court staff assured the

plaintiff that the miscommunication had occurred on the court's end and that the court would not penalize the plaintiff for being unable to appear at the phone hearing.

## II.     Standard of Review

When the Appeals Council denies a plaintiff's request for review, the ALJ's decision constitutes the final decision of the Commissioner. <u>Gedatus v. Saul</u>, 994 F.3d 893, 898 (7th Cir. 2021). Section 405(g) of Title 42 limits the court's review; the district court must uphold the decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. §405(g); <u>Jelinek v. Astrue</u>, 662 F.3d 805, 811 (7th Cir. 2011). "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." <u>Hopgood</u> <u>ex rel.</u> <u>L.G. v. Astrue</u>, 578 F.3d 696, 698 (7th Cir. 2009) (citation omitted). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." <u>Schaaf v. Astrue</u>, 602 F.3d 869, 874 (7th Cir. 2010). A decision denying benefits need not discuss every piece of evidence; remand is appropriate, however, when an ALJ fails to provide adequate support for the conclusions drawn. <u>Jelinek</u>, 662 F.3d at 811. If conflicting evidence in the record would allow reasonable minds to disagree about whether the plaintiff is disabled, the ALJ's decision to deny the application for benefits must be affirmed if the decision is adequately supported. <u>Elder v. Astrue</u>, 529 F.3d 408, 413 (7th Cir. 2008).

The district court must review the entire record, including both evidence that supports the ALJ's conclusions and evidence that detracts from the ALJ's conclusions, but it may not "displace the ALJ's judgment by reconsidering facts

or evidence, or by making independent credibility determinations." Id. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019). Judicial review is limited to the rationales offered by the ALJ. Shauger v. Astrue, 675 F.3d 690, 697 (7th Cir. 2012) (citing SEC v. Chenery Corp., 318 U.S. 80, 93–95 (1943)). The ALJ must follow the Social Security Administration's rulings and regulations in making a determination. Failure to do so requires reversal unless the error is harmless. See Prochaska v. Barnhart, 454 F.3d 731, 736–37 (7th Cir. 2006). A reviewing court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." Burmester v. Berryhill, 920 F.3d 507, 510 (7th Cir. 2019) (quoting Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003)). The district court will uphold a decision so long as the record reasonably supports it and the ALJ explains her analysis of the evidence with enough detail and clarity to permit meaningful review. Eichstadt v. Astrue, 534 F.3d 663, 665–66 (7th Cir. 2008).

## III. Right to Representation

The plaintiff represented himself before the ALJ and represents himself on appeal before this court. At the September 9, 2020 hearing, the ALJ noted that the plaintiff was not represented by an attorney. Dkt. No. 13-3 at 35–36. The plaintiff indicated that he did have a lawyer at one point, but that the lawyer "backed out" the week before the hearing. Id. at 36. The ALJ indicated that "someone" from the Social Security Administration had spoken with the plaintiff on March 16, 2020 regarding his right to representation:

> And we did previously—someone had contacted you from Social Security also back on March 16th of this year and, during that call,

10

they've gone over your right to representation since that was previously discussed with you —

. . .

Well, the right to representation was previously discussed with you, so we will proceed with the hearing today.

Dkt. No. 13-3 at 36.

Claimants seeking disability benefits have a statutory right to counsel. Jozefyk v. Berryhill, 923 F.3d 492, 496 (7th Cir. 2019) (citing 42 U.S.C. §406). In this circuit, "a claimant can waive that right once advised of '(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.'" Id. (quoting Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007)). See also Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994) (original source of quote). The Seventh Circuit acknowledges that it "mandate[s] more disclosures than the regulations, which require the agency simply to notify the claimant in writing of his 'options for obtaining attorneys,' and the 'organizations which provide legal services free of charge.'" Jozefyk, 923 F.3d at 496 (citing 42 U.S.C. §1383(d)(2)(D); 20 C.F.R. §404.1706).

The record includes a "Report of Contact" indicating that someone from the SSA's Hearing Office called the plaintiff on March 16, 2020, for a "Pre-Hearing Development Contact" (PHDC). Dkt. No. 13-5 at 34–35. This record includes bullet point notes indicating the following:

- Provided the claimant information regarding the right to representation and the claimant affirmed understanding of that information;
- Provided the claimant with contact information for representatives/representative organizations;
- Asked whether the claimant intended to obtain representation; and

11

- Explained the need to obtain representation timely if they choose to have a representative.

  . . .

- Informed the claimant that the Judge may not grant a postponement to obtain representation absent good cause.

Dkt. No. 13-5 at 34. Another "Report of Contact" from July 27, 2020 appears to reference this March 16 conversation and included the following notes:

> The claimant had a prior PHDC where his right to representation was reviewed. I confirmed the [sic] he did not have a representative and reminded him that the Agency may not grant a postponement to obtain representation absent good cause.

Dkt. No. 13-7 at 62.

The court cannot determine whether the plaintiff was adequately advised of his statutory right to counsel and whether he validly waived that right before representing himself, because whatever advice he was given occurred during a telephone call held off the record. Although the notes of this conversation indicate that the SSA "[p]rovided the claimant information regarding the right to representation," there are no further details, such as whether the person from the SSA described to the plaintiff "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." Jozefyk, 923 F.3d at 496 (internal quotations and citation omitted). Because the court is remanding this case on other grounds, it will direct the ALJ to discuss with the plaintiff, on the record and in the detail required by the Seventh Circuit, his right to counsel.

## IV. Analysis

The court must "construe pro se filings liberally, and will address any cogent arguments [it is] able to discern . . . ." Rockwell v. Saul, 781 F. App'x

532, 537 (7th Cir. 2019) (quoting <u>Parker v. Four Seasons Hotels, Ltd.</u>, 845 F.3d 807, 811 (7th Cir. 2017)).[5] The plaintiff argues that he cannot perform all the physical functions that the ALJ found he could in the residual functional capacity assessment. The plaintiff asserts that his physical impairments are "proven by multiple doctors that examined [him] in person" and supported by the evidence. Dkt. No. 19 at 2. The plaintiff points to specific pages in the record, summarizing physical exam findings regarding his right arm, hand and shoulder. <u>Id.</u> at 2–3. The plaintiff explains the difficulties he experiences with his arm, hand, shoulder and headaches, as well as issues with pain radiating up into his neck, low blood pressure and dizziness, fainting, stomachaches and weight loss, tiredness, lightheadedness, right knee pain/stiffness and difficulty standing and walking without falling. <u>Id.</u> at 2, 3–4, 5.

The plaintiff also disagrees with the ALJ's assessment of his mental abilities. Dkt. No. 19 at 3, 4. The plaintiff asserts that despite what the ALJ found, he cannot handle change and stress at all, and he cannot interact with others without losing his temper. <u>Id.</u> at 3. He explains that "[b]ecause of everything going on," he has been depressed and experiences "lots of anxiety and bouts of anger to the point of loosing [sic] complete control and going into a violent rage." <u>Id.</u> at 4. He states that his pain, depression, anxiety and mood swings decide what he does or doesn't do in life. <u>Id.</u> The plaintiff refers to pages in the record documenting his irritability, anger issues and inability to keep calm and interact with others without yelling and becoming violent, as well as

_____

[5] <u>But see also</u> <u>Weliever v. Saul</u>, 848 F. App'x 200, 202 (7th Cir. 2021) ("Although we liberally construe pro se filings, 'an appellate brief that does not even *try* to engage the reasons the appellant lost has no prospect of success.'") (emphasis in original) (quoting <u>Klein v. O'Brien</u>, 884 F.3d 754, 757 (7th Cir. 2018)).

pointing to the fact that he could not get through the phone hearing before the ALJ. Id. The plaintiff also indicates that he has memory problems: "[I]t almost feels like I'm loosing [sic] my mind at times, I can't think or remember things, it's just blank." Id. at 5.

Finally, the plaintiff takes issue with the agency's refusal to arrange for an independent doctor to examine him:

> Social security has never had a actuall [sic] doctor examine me in person even though both me and my doctor's requested to have this done since social security won't listen to my doctor's [sic] that treat me on what my limitations are. We requested to have a independent doctor examine me in person but social security refused to do so.

Dkt. No. 19 at 3. The court interprets this as a claim that the ALJ failed to develop a full and fair record.

A.      Assessment of Plaintiff's Mental Impairments

The Commissioner concedes that the court should reverse the ALJ's decision and remand under sentence four of 42 U.S.C. §405(g) for further consideration of the plaintiff's mental limitations. Dkt. No. 30 at 1, 4. See also Dkt. No. 25 at ¶4 (declaration in support of Commissioner's second motion for an extension stating that "[i]n the course of preparing the Commissioner's brief, the agency determined that this case should be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)"). The Commissioner indicates that on remand, "the Appeals Council intends to direct the ALJ to reassess Plaintiff's mental residual functional capacity; proceed through the sequential evaluation process as needed to reach a decision; if warranted, obtain additional vocational expert testimony; and issue a new decision." Dkt. No. 30 at 4.

The court will remand for reconsideration and reassessment of the plaintiff's mental impairments and mental residual functional capacity.

14

B. Assessment of Physical Impairments

Although the Commissioner agrees that remand is required for reassessment of the plaintiff's *mental* impairments, the Commissioner argues that the court should affirm the ALJ's analysis of the plaintiff's *physical* residual functional capacity. Dkt. No. 30 at 1. The Commissioner asserts that the ALJ did not err in evaluating the plaintiff's physical capabilities and that the ALJ's findings were supported by substantial evidence. Id. at 1–3.

1. *The Plaintiff's Arguments*

The plaintiff argues that the ALJ incorrectly found that he is capable of the following physical abilities in crafting the residual functional capacity:

> [H]e can never climb ladders, ropes, or scaffolds; never crawl; never reach overhead with the right (dominant) upper extremity; frequently reach in all other directions with the right upper extremity; and frequently handle, finger, and feel with the right upper extremity. He can tolerate occasional exposure to vibration and must avoid unprotected heights, moving mechanical parts, and operating a motor vehicle. He can tolerate moderate noise in a work environment and lighting no brighter than in a typical office environment.

Dkt. No. 19 at 2 (quoting Dkt. No. 13-3 at 18).

First, the plaintiff asserts that his arm, hand and shoulder impairments prohibit him from doing these physical tasks:

> Social security states that I can do all of that ,but in fact I absolutely cannot move my right arm and hand in that way or use my hand for fine manipulation and vibration.i can use my hand for writing or typing for more than a few minutes at most before I am unable to continue from the pain and cramping in hand and arm, shoulder.i can't even pick my arm up to move it forward and extend to shake hands with a person without having more pain.i can't lift my arm forward or to the side or above my head.this is proven by multiple doctors that examined me in person that I have in evidence[.]

Dkt. No. 19 at 2. He argues that although the ALJ found that he could tolerate exposure to vibration, he "cannot have any exposure to vibration with either

hand" because he "had Carpal tunnel surgery already because of the damage done and still had problems after surgery." Id. at 3. The plaintiff argues that his treating doctors have found that he is not capable of performing of physical tasks and explains how his pain limits his abilities:

> [M]y doctors that examined me in person state that I cannot use my right hand for fine manipulation and that I cannot reach forward or up or to the side with my right arm.i can only write or type for a few minutes before being in pain and tiring out. With the pain in the right side of my body my arm ,hand and shoulder are in pain all the time that gets worse with movement of arm and hand that radiates up into the neck to the point of not being able to move neck at all side to side or up and down.

Id. at 3.

In support, the plaintiff points to records documenting the difficulties and pain he experiences in his right arm, hand and shoulder. Dkt. No. 19 at 2–3. In records from his long-term treating provider, Dr. Devermann, the plaintiff highlights November 2017 physical exam findings that note "decreased sensation upper right extremity," "right hand grasp is weak 2/5," "decreased sensation globally of the right arm and shoulder," "increased sensitivity to light touch of the right lower scapular area," decreased range of motion of the right shoulder with abduction approximately 90° and decreased elbow flexion on the right as well." Id. at 2 (quoting Dkt. No. 13-8 at 11). The plaintiff points to physical exam findings from December 2017 revealing "resting tremor in right arm," "shoulder [range of motion] is about a 30-45 degree arc until increased pain to the point of not being able to go any further" and "feeling of firm endpoint in abduction, flexion and external rotation," as well as noting that "with any palpation of trapezius, medial to inferior scapula, patient pulls away in pain." Id. (quoting Dkt. No. 13-8 at 26). In December 2017 treatment notes, Dr. Devermann indicated, "I do not think the patient is malingering" and

16

indicated that the plaintiff exhibited "progression of his symptoms today with the development of some right lower extremity weakness." Id. (quoting Dkt. No. 13-8 at 33). Dr. Devermann also noted that the plaintiff has "a long-standing history of chronic right arm and scapular pain" dating "back to about 2010" and has "seen multiple specialists including orthopedics, chronic pain, neurology and no clear diagnosis was determined." Id. (quoting Dkt. No. 13-8 at 34). Progress notes from Dr. Albala in January 2018 indicate that the plaintiff's "shoulder MRI had many problems, including tendinosis, edema and so on, besides a damaged supraspinatus muscle/tendon." Dkt. No. 19 at 3 (quoting Dkt. No. 13-8 at 57). Dr. Albala's physical exam also noted that the plaintiff did not move his arm and kept it adducted, and that he had "a tremor of the right hand that is quite fast and never interrupted." Id. (quoting Dkt. No. 13-8 at 57). The plaintiff points to physical exams in the record showing decreased range of motion, weakness and limited mobility in his right arm, shoulder and hand. Id. (citing Dkt. No. 13-8 at 160, 171, 229). The medical records that the plaintiff quotes also contain notes of his reported symptoms and activities.

Second, the plaintiff disagrees with the ALJ's finding that he "can tolerate exposure to moderate noise and office strength lighting," stating, "[W]ith my bad headaches that I suffer from regularly I can't tolerate any light or noise when I have a episode." Dkt. No. 19 at 3. The plaintiff explains that he "get[s] bad headaches that are affected by noise and light" and describes episodes of dizziness, tiredness and "lower blood pressure that makes dizziness worse and sometimes faint or make [him] weak to the point that [he] cannot stand up." Id. at 3–4. The plaintiff states that he uses a cane to assist with walking and standing to keep his balance, but that he's still "fallen multiple times resulting

17

in a concussion and most recent a sprained left hand and shoulder when [he] fainted and couldn't stand while having a episode." Id. at 4.

Third, the plaintiff includes statements regarding additional impairments, such as stomach and gastrointestinal issues, tiredness, weakness and difficulty sleeping because of his chronic pain. Dkt. No. 19 at 4–5. The plaintiff states that lately, "the pain level has been higher" and he feels like he has "no energy" and is "dizzy and lightheaded" and has "headaches, nausea and upset stomach." Id. at 4. He indicates that his doctors have been changing his medicine "to try and help identify the problem" but that his "body has been having a hard time adjusting." Id. The plaintiff also adds that he has "fallen over 4 times recently and ha[s] gotten a concussion and just recently sprained [his] left hand and shoulder from fainting and falling last year," and that he still experiences "pain and limited use of [his] left hand and shoulder." Id. at 5. He also experiences right knee pain and stiffness and drops in blood pressure that result in almost fainting or fainting. Id.

### 2. The ALJ's Findings

"The ALJ's decision will be upheld if supported by 'substantial evidence,' which means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Jozefyk, 923 F.3d at 496 (quoting Moore v. Colvin, 743 F.3d 1118, 1120–21 (7th Cir. 2014)). The ALJ must provide an "accurate and logical bridge" from the evidence to the conclusion. Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ found that the plaintiff suffers from the following severe impairments: chronic pain syndrome; myofascial pain syndrome; dysfunction of the right upper extremity; post-concussion syndrome with headaches; and depression. Dkt. No. 13-3 at 15. The ALJ also found that the plaintiff's

18

gastroesophageal reflux disease (stomach), cranial nerve schwannoma (neck) and hypertension were non-severe impairments because the record evidence did not establish that these impairments had more than minimal limitations on the plaintiff's ability to perform basic work activities.[6] Id.

In the Social Security analysis, ALJs must assess a claimant's residual functional capacity (RFC), which means they must determine the plaintiff's "ability to work despite [his] health problems." Stage v. Colvin, 812 F.3d 1121, 1124 (7th Cir. 2016). The RFC is "the maximum that a claimant can still do despite his mental and physical limitations." Craft v. Astrue, 539 F.3d 668, 675–76 (7th Cir. 2008). In crafting a claimant's RFC, ALJs "must consider all medically determinable impairments . . . even those that are not considered 'severe.'" Craft, 539 F.3d at 676 (citing 20 C.F.R. §404.1545(a)(2), (b), (c)).

The ALJ first acknowledged the plaintiff's hearing testimony that he is unable to work due to pain on the right side of his body, including his extremities and his neck, and that he has ongoing symptoms of numbness, tingling and headaches that worsen with bright lights. Dkt. No. 13-3 at 18. The ALJ recounted the plaintiff's testimony that his daily activities include sitting in a quiet and dark room and sometimes watching television, and that his brother does the cooking and chores. Id.

The ALJ then summarized the medical record evidence, beginning with the plaintiff's reported symptoms to his doctors of widespread pain, headaches, numbness, memory loss, dizziness, weakness and lightheadedness. Dkt. No. 13-3 at 19 (citing Dkt. Nos. 13-8 at 2, 6, 10, 24, 60, 219; 13-9 at 109; 13-11 at 6). The ALJ added that the record showed that the plaintiff fell in the shower in

---

[6] The ALJ also found that the plaintiff's alleged cervical spondylosis and radiculopathy were not medically determinable impairments. Dkt. No. 13-3 at 15–16. As best the court can tell, the plaintiff has not raised these as an issue.

19

May 2019, hit his head and lost consciousness. Id. (citing Dkt. No. 13-10 at 138–39). Medical providers subsequently diagnosed the plaintiff with a concussion. Id. (citing Dkt. No. 13-10 at 147). The ALJ noted that despite the plaintiff's allegations, "physical examination findings showed normal grip strength, no sign of muscle weakness or atrophy, normal strength, a non-ataxic gait, no crepitus or effusion, normal sensation, full range of motion, and no clubbing, cyanosis, or edema." Id. (citing Dkt. Nos. 13-8 at 26, 38, 77, 85, 228–29; 13-9 at 120; 13-10 at 141–42). The ALJ did acknowledge, however, that on other occasions examining providers had found that the plaintiff "appeared uncomfortable and exhibited decreased sensation, weakened right-sided grip strength, increased sensitivity to touch, tenderness to palpation, resting tremor, decreased range of motion, a slow and antalgic gait, normal reflexes, and positive Spurling's test." Id. (citing Dkt. Nos. 13-8 at 11, 26, 38, 77, 85, 228–29; 13-9 at 43, 97, 120; 13-10 at 141; 13-11 at 9, 153, 220). The ALJ also summarized the results of diagnostic and imaging tests, including a December 2017 x-ray of the plaintiff's right shoulder and a May 2019 CT scan of the plaintiff's brain that both showed "unremarkable findings." Dkt. No. 13-3 at 19 (citing Dkt. Nos. 13-8 at 19; 13-10 at 146–47). But a March 2018 MRI of the plaintiff's right shoulder "showed abnormalities including tendinopathy, partial-thickness tears of the rotator cuff, AC joint athropathy, subacromial outlet narrowing, and findings consistent with SLAP labral tears and fraying." Id. (citing Dkt. No. 13-9 at 71). Finally, the ALJ acknowledged the plaintiff's treatments, which included prescribed medications (Tramadol, Methocarbamol, Percocet, and Gabapentin) to treat his symptoms and "other treatment modalities, including nerve block injections." Id. (citing Dkt. No. 13-8 at 4, 36, 122).

The plaintiff's medical records contain physical exams, diagnostic tests and imaging that demonstrate both normal and abnormal findings. Perhaps a different judge might have found the abnormal findings more compelling. But "[e]ven if reasonable minds could differ on the weight the ALJ gave to the medical evidence," this court, sitting as an appellate court, cannot substitute its judgment for that of the ALJ. Karr v. Saul, 989 F.3d 508, 513 (7th Cir. 2021) (citing Zoch v. Saul, 981 F.3d 597, 602 (7th Cir. 2020)). This court, acting as an appellate court, cannot reconsider facts, reweigh the evidence or resolve conflicts in evidence. Burmester, 920 F.3d at 510; White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005).

But while this court cannot reweigh or reconsider evidence the ALJ weighed and considered, it *can* look at whether the ALJ considered everything he was required to consider in making his decision. Although the ALJ found that the plaintiff's gastroesophageal reflux disease, cranial nerve schwannoma and hypertension were non-severe impairments, dkt. no. 13-3 at 15, the decision does not appear to mention these impairments again or analyze their impact on the plaintiff's RFC. "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." Denton v. Astrue, 596 F.3d 419, 423 (7th Cir. 2010) (citing 20 C.F.R. §404.1523; Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009); Villano v. Astrue, 556 F.3d 558, 563 (7th Cir. 2009). See also Craft, 539 F.3d at 675 (same). "A failure to fully consider the impact of non-severe impairments requires reversal." Denton, 596 F.3d at 423 (citing Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003)). There is no clear indication that the ALJ considered the plaintiff's gastroesophageal reflux disease, cranial nerve

Case 1:21-cv-01309-PP   Filed 05/31/23   Page 21 of 34   Document 35

schwannoma and hypertension in determining the plaintiff's RFC. The ALJ's failure to fully consider the impact of these non-severe impairments is reversible error. The ALJ must consider these non-severe impairments, and explain how he did so, on remand.

Next, the ALJ evaluated the plaintiff's subjective symptoms under SSR 16-3p, concluding that "the record shows some degree of limitation but not to the extent alleged by" the plaintiff. Dkt. No. 13-3 at 20. The ALJ noted that the plaintiff reported significant symptoms resulting in limitations on his activities of daily living, including "significant pain, weakness, headaches, and balance disturbance that precluded him from working or performing exertional tasks and resulted in the use of" a cane. Id. The ALJ found, however, that the positive physical exam findings previously summarized contradicted these allegations of disabling symptoms (normal grip strength, no sign of muscle weakness or atrophy, normal strength, a non-ataxic gait, no crepitus or effusion, normal sensation, full range of motion, and no clubbing, cyanosis, or edema) and that the record did "not provide evidence of a prescription for a cane." Id.

The ALJ also noted that the plaintiff "told providers that he retained the ability to do laundry and prepare simple meals." Dkt. No. 13-3 at 20 (citing Dkt. No. 13-10 at 110). In considering whether the record supports the severity of the plaintiff's alleged symptoms, "the ALJ will look to the claimant's reported activity levels . . . ." Apke, 817 F. App'x at 257. But the Seventh Circuit repeatedly has stressed the importance of using caution when considering a plaintiff's daily activities in a credibility evaluation. See Ghiselli v. Colvin, 837 F.3d 771 (7th Cir. 2016); Roddy v. Astrue, 705 F.3d 631 (7th Cir. 2013). For example, the court of appeals found that an ALJ "wrongly evaluated the

significance" of a claimant's daily activities because the ALJ "failed to understand that working sporadically or performing household chores are not inconsistent with being unable to engage in substantial gainful activity." Engstrand v. Colvin, 788 F.3d 655, 661 (7th Cir. 2015) (citations omitted). Here, the ALJ pointed to *one* visit to Dr. Devermann on March 19, 2019, the notes from which indicate that the plaintiff reported that he "is very limited in his activities" and "cannot do any substantial household work," but "will sometimes do a little laundry or some simple cooking." Dkt. No. 13-10 at 110–11. The ALJ's finding that the plaintiff reported that he "retained the ability to do laundry and prepare simple meals," dkt. no. 13-3 at 20, is an overstatement and ignores the other portions of that same record. The court is not convinced that this one statement by the plaintiff undercuts the plaintiff's allegations of chronic pain and disabling symptoms.

Further, in considering whether the record supports the severity of the plaintiff's alleged symptoms, "the ALJ will look to the . . . treatment received." Apke, 817 F. App'x at 257. See SSR 16-3p, 2017 WL 5180304, at *9 ("We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities . . . ."). It is not clear, but it appears that the ALJ's decision did not mention treatment in considering the plaintiff's alleged *physical* impairments. At the end of the paragraph, immediately following his assessment of the plaintiff's reported *mental* symptoms, the ALJ noted that "the record showed generally conservative treatment with medication and therapy." Dkt. No. 13-3 at 20. The court is not sure whether the ALJ intended this statement to apply to the paragraph assessing the plaintiff's subjective symptoms as a whole, or only to

23

the plaintiff's alleged mental symptoms. The ALJ's decision earlier acknowledged that the record demonstrated that the plaintiff was prescribed medication to treat his physical symptoms and "also underwent other treatment modalities, including nerve block injections." Id. at 19. That could imply that the ALJ's reference to "conservative treatment" applied only to the plaintiff's mental symptoms and that the ALJ did not consider the plaintiff's treatment in assessing his reported physical impairments/symptoms.

The Commissioner is correct that the plaintiff "does not appear to challenge the ALJ's symptom analysis." See Dkt. No. 30 at 3. And a reviewing court does not "decide questions of credibility, or substitute [its] judgment for that of the Commissioner." Burmester, 920 F.3d at 510. On the other hand, this does not mean that the court "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." Minnick v. Colvin, 775 F.3d 929, 935 (7th Cir. 2015) (quoting Clifford, 227 F.3d at 869).

"When assessing an ALJ's credibility determination," the court must "merely examine whether the ALJ's determination was reasoned and supported." Elder, 529 F.3d at 413 (citations omitted). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." Cullinan v. Berryhill, 878 F.3d 598, 603 (7th Cir. 2017) (citation omitted). "Court[s] will uphold an ALJ's credibility determination unless that determination is 'patently wrong.'" Wilder v. Kijakazi, 22 F.4th 644, 653 (7th Cir. 2022) (quoting Stepp v. Colvin, 795 F.3d 711, 720 (7th Cir. 2015)). Despite the concerns the court has identified, the court cannot say that the ALJ's credibility determination was "patently wrong" and independently requires reversal. But on remand, the ALJ should make clear

whether he considered treatment with regard to both the plaintiff's physical and mental impairments.

The last section of the ALJ's RFC assessment involved the ALJ's consideration of medical opinion evidence. Dkt. No. 13-3 at 20–22. First, the ALJ found state agency consultant Dr. Belson's opinion "only somewhat persuasive." Id. at 20. The ALJ stated that Dr. Belson had found that the plaintiff could perform less than the full range of light work with additional limitations of "no front, lateral or overhead reaching with the right upper extremity." Id. (citing Dkt. No. 13-4 at 4–15). The ALJ opined, however, that these findings were not entirely consistent with the overall record, "which supports slightly different limitations." Id. Specifically, the ALJ stated that "the evidence as a whole does not support the degree of manipulative limitations" imposed by Dr. Belson and pointed to, for example, a February 2018 evaluation of the plaintiff by a neurologist that "revealed no objective finding of weakness of the right arm, and the neurologist's assessment was that there was no organic basis for the weakness of the right arm." Dkt. No. 13-3 at 20 (citing Dkt. No. 13-8 at 83–85). The ALJ's RFC therefore imposed the limitation that the plaintiff can "*never* reach *overhead* with the right (dominant) upper extremity," but limited the plaintiff to only "*frequently* reach in all other directions with the right upper extremity." Id. at 18. The ALJ did, however, find that the overall record supported *greater* limitations than those imposed by Dr. Belson in other areas, "such as avoiding certain hazards and limiting exposure to certain environmental conditions." Id. at 20.

The ALJ also found that the opinions of the state agency consultants at the reconsideration level were not persuasive. Dkt. No. 13-3 at 20–21. These consultants opined that the plaintiff had *no* severe physical impairments and

thus did not require any RFC limitations. Id. The ALJ found that this was not consistent with the overall record, which demonstrated a need for postural, manipulative, overhead reaching and environmental limitations. Id. at 21, 22.

"An ALJ has 'final responsibility' for determining a claimant's residual functional capacity and need not adopt any one doctor's opinion." Fanta v. Saul, 848 F. App'x 655, 658 (7th Cir. 2021) (citing 20 C.F.R. §404.1527(d)(2); Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007)). "[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." Schmidt, 496 F.3d at 845 (citing Diaz v. Chater, 55 F.3d 300, 306 n.2 (7th Cir. 1995)). The ALJ appropriately considered the opinions of the state agency consultants and did not err in crafting an RFC that adopted some of Dr. Belson's limitations and that imposed greater limitations and fewer limitations than Dr. Belson in other areas.

The ALJ then considered the opinions of the plaintiff's treating physician, Dr. Devermann. Dkt. No. 13-3 at 22. The ALJ recounted Dr. Devermann's March 19, 2019 notes stating his belief that the plaintiff is disabled, dkt. no. 13-9 at 255, and Dr. Devermann's January 21, 2021 letter stating his belief that the plaintiff is "totally disabled and unable to hold any meaningful job," dkt. no. 13-11 at 217. The ALJ summarized Dr. Devermann's specific comments on the plaintiff's physical impairments:

> In the prior letter from August 11, 2014, Dr. Devermann notes that the etiology of the claimant's chronic pain in the right scapula is not clear, but he opined that the claimant did not have endurance for daily activities with his right arm, could not use a keyboard or mouse for more than a couple of minutes with getting increasing pain and fatigue in the right arm, and could briefly lift 20-to-30 pounds for a few seconds, but would be unable to do so repeatedly or for any extended periods (Ex. B12F). Dr. Devermann further found the claimant was unable to perform work activities requiring

26

the right upper extremity. He supported this opinion with citations to the claimant's subjective complaints of pain, history of treatment including multiple medications, and examination findings showing shakiness, a slow gait, guarded behavior regarding the right upper extremity, and discomfort sitting in and getting out of a chair (B12F/B13F).

Dkt. No. 13-3 at 22 (citing Dkt. No. 13-11 at 213–22). The ALJ stated that he did not find Dr. Devermann's opinions persuasive. First, the ALJ found that these opinions were "inconsistent with the record of evidence from the relevant period, which supports less restrictive right upper extremity manipulative limitations." Id. The ALJ pointed again to the previously cited "optimal examination findings showing normal grip strength, no sign of muscle weakness or atrophy, normal strength, no crepitus or effusion, and full range of motion." Id. The ALJ also specifically recounted that a February 2018 evaluation by a neurologist "revealed no objective finding of weakness of the right arm, and the neurologist's assessment was that there was no organic basis for the weakness of the right arm." Id. (citing Dkt. No. 13-8 at 83–85).

Second, in finding Dr. Devermann's opinions were not persuasive, the ALJ noted that "any statements by Dr. Devermann that the claimant is disabled or unable to hold a job is on an issue reserved for the Commissioner." Dkt. No. 13-3 at 22. The ALJ was correct in discounting statements from Dr. Devermann opining that the plaintiff is "totally disabled and unable to hold any meaningful job" because "the ultimate determination of disability is reserved for the Commissioner, and summarily asserting that the claimant is disabled does not suffice under the Commissioner's regulations." Albert v. Kijakazi, 34 F.4th 611, 616 (7th Cir. 2022). The regulations instruct that statements that a claimant is or is "not disabled, blind, able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive." 20 C.F.R.

§404.1520b(c)(3)(i).[7] In other words, a claimant "is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'" Clifford, 227 F.3d at 870.

When there is conflicting evidence, the ALJ may decide whom to believe, as long as substantial evidence supports that decision. Apke, 817 F. App'x at 256 (citation omitted). "Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence," the court cannot substitute its judgment for that of the ALJ's. Karr, 989 F.3d at 513 (citing Zoch, 981 F.3d at 602). In other words, "it is not for [the court] to tell the ALJ which of two inconsistent opinions he should credit." Retzloff v. Colvin, 673 F. App'x 561, 568 (7th Cir. 2016). The ALJ did not err in his assessment of the medical opinion evidence.

The court concludes that the ALJ did not commit reversible error in his credibility determination or consideration of the medical opinion evidence. Because there is no indication that the ALJ fully considered the plaintiff's non-severe impairments (gastroesophageal reflux disease, cranial nerve schwannoma and hypertension) in determining the plaintiff's RFC, however, the court must remand for reconsideration of the plaintiff's physical RFC.

C.     Failure to Develop a Full and Fair Record

The plaintiff also raises a concern that "[s]ocial security has never had a actuall [sic] doctor examine [him] in person even though both [he] and [his] doctor's [sic] requested to have this done . . . ." Dkt. No. 19 at 3. The plaintiff states that he and his doctors "requested to have a independent doctor examine [him] in person but social security refused to do so." Id. See Dkt. No. 13-11 at 216 (January 2021 letter from the plaintiff to the ALJ stating his

---

[7] "Paragraphs (c)(1) through (c)(3) apply in claims filed . . . on or after March 27, 2017." 20 C.F.R. §404.1520b(c).

28

"doctor suggested that you should get another licensed dr. to examine Scott in person to give his opinion"); 217 (January 21, 2021 letter from Dr. Devermann stating, "If the court does not consider him disabled I would hope they would direct Scott to a disability determination examiner for another opinion.").

The Commissioner asserts that ALJs are required to "seek additional evidence from a medical source if the record [has] insufficient evidence to permit a decision." Dkt. No. 30 at 4 (citing 20 C.F.R. §404.1520b(b)(2); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)). The Commissioner argues that the record here was not inadequate and that the ALJ had no duty to arrange for a consultative examination. Id. (citing Skarbek, 390 F.3d at 504; Britt v. Berryhill, 889 F.3d 422, 427 (7th Cir. 2018)).

At the September 2020 hearing, the ALJ informed the plaintiff that he would provide the plaintiff "with an opportunity to review the entire record as soon as possible before a decision is issued." Dkt. No. 13-3 at 37. Later in the hearing, the ALJ indicated that the most recent documents in the record were from Aurora Healthcare through March 18th of 2020 and asked the plaintiff whether he had had any further treatment since that time. Id. at 57. The plaintiff responded in the affirmative, reporting that he had had a phone call with Aurora because the hospital was not seeing people in-person due to the COVID-19 pandemic. Id. at 57–58. The ALJ asked whether the plaintiff had undergone any other treatment anywhere other than Aurora in the past six months, and the plaintiff said he had not. Id. at 58.

After the hearing, the ALJ sought additional documentation and the ALJ's decision stated that these records were requested, received, entered into the record and considered in the decision. Dkt. No. 13-3 at 12 (citing Dkt. Nos. 13-7 at 76–83; 13-11 at 171–212). The ALJ stated that these records were

proffered to the plaintiff, dkt. no. 13-7 at 64–65, 85–86, and that the plaintiff submitted a letter requesting evaluation by another doctor, 13-11 at 216. Id. The ALJ found that there was "ample evidence within the record and further evaluation [was] not required for proceeding" with the decision. Id.

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000); Thompson v. Sullivan, 933 F.2d 581, 585 (7th Cir. 1991)). "Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence." Smith, 231 F.3d at 437 (citing Thompson, 933 F.2d at 586). Generally, ALJs are only "required to make a 'reasonable effort' to ensure that the claimant's record contains, at a minimum, enough information to assess the claimant's RFC and to make a disability determination." Martin v. Astrue, 345 F. App'x 197, 201–02 (7th Cir. 2009) (citing 20 C.F.R. §§416.912(d), 416.927(c)(3); S.S.R. 96–8p; Skinner, 478 F.3d at 843–44). However, "[t]his duty is enhanced when a claimant appears without counsel; then the ALJ must 'scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts.'" Nelms, 553 F.3d at 1098 (alterations in original) (quoting Thompson, 933 F.2d at 585–86). This includes requiring the ALJ "to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." Nelms, 553 F.3d at 1098 (citations omitted).

The Seventh Circuit "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather . . . ." Nelms, 553 F.3d at 1098 (citing Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994); Binion, 13 F.3d at

30

246). "Although there is no hard and fast standard that delineates what is 'full and fair' development of the record, 'a significant omission is usually required before this court will find that the Secretary failed to assist *pro se* claimants in developing the record fully and fairly.'" Ferguson v. Barnhart, 67 F. App'x 360, 367 (7th Cir. 2003) (quoting Nelson v. Apfel, 131 F.3d 1228, 1235 (7th Cir. 1997)). See also Nelms, 553 F.3d at 1098 (same). "An omission from the record is significant only if it is prejudicial to the claimant." Nicholson v. Astrue, 341 F. App'x 248, 253 (7th Cir. 2009) (citing Nelms, 553 F.3d at 1098). The Seventh Circuit also has acknowledged that "a 'complete' record is always elusive . . . and there is no absolute requirement that an ALJ update the medical records to the time of the hearing . . . ." Nelms, 553 F.3d at 1099 (internal citations omitted). And "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." Simons v. Saul, 817 F. App'x 227, 232 (7th Cir. 2020) (quoting Binion, 13 F.3d at 246).

The court concludes that the record contained adequate information for the ALJ to render a decision and that his denial of the plaintiff's request for the agency to arrange for an independent doctor to examine the plaintiff in person did not render the record incomplete or prejudice the plaintiff.

## V. The Plaintiff's Requested Relief

The plaintiff has asked this court to award him a favorable decision and back pay. Dkt. No. 19 at 5. See also Dkt. No. 29 ("I am asking this Court to award me my benefits with a favorable decision and full back pay to 2014 at disability onset."). The Commissioner argues that an award of benefits is proper only when all factual issues have been resolved and the only conclusion from the record is that the applicant qualifies for disability benefits. Dkt. No. 30 at 5 (collecting cases). The Commissioner asserts the record here does not

clearly demonstrate that a finding of disability is the only possible outcome because there is evidence in the record supporting a finding of not disabled, and asserts that a remand for further proceedings is the appropriate relief. Id. at 5–6.

This court has "the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." Allord v. Astrue, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). "This power includes the courts' ability to remand with instructions for the Commissioner to calculate and award benefits to the applicant." Id. (citing Campbell, 988 F.2d at 744). However, "[a] benefits award is appropriate 'only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits.'" Anderson v. Berryhill, 711 F. App'x 796, 798 (7th Cir. 2018) (quoting Allord, 631 F.3d at 415). See also Kaminski v. Berryhill, 894 F.3d 870, 875 (7th Cir. 2018) ("In unusual cases, however, where the relevant factual issues have been resolved and the record requires a finding of disability, a court may order an award of benefits.") (collecting cases).

The factual record has not been fully resolved. As the court has explained, it is concerned about whether the plaintiff was fully informed of his right to counsel; if not, the fact that he represented himself may have impacted whether the record was fully developed. The record has not been fully developed with regard to the plaintiff's mental impairments. The record has not been fully developed regarding the impact of the plaintiff's non-severe impairments on the RFC. The record has not been fully developed regarding the plaintiff's activities of daily living, and whether his single statement that he can

do laundry sometimes is sufficient to undercut his subjective symptom reports. The record is not fully developed as to whether the ALJ considered the plaintiff's treatment with regard to both his mental and physical impairments. These things need to be fleshed out and analyzed by an ALJ; this appellate court cannot do those things.

The plaintiff also asks this court to "set" the back pay date back to the date in 2014 on which he filed his first Title II application. The court cannot do that. As the ALJ explained, that application was denied, with a final decision, in December 2017. The plaintiff could have appealed that decision within sixty (60) days of the date it was issued. See 42 U.S.C. §405(g). Otherwise, a final decision is binding and cannot be reviewed. See 42 U.S.C. §405(h). The ALJ refused to reopen the 2017 determination, and "[f]ederal courts . . . lack jurisdiction to review agency decisions declining to reopen previous determinations except for those refusals having constitutional implications." Campbell v. Shalala, 988 F.2d 741, 745 (7th Cir. 1993) (citing Califano v. Sanders, 430 U.S. 99, 107–09 (1977)).

The court understands the plaintiff's frustration with how long the process has taken, and with the Commissioner's position. The Social Security benefits process is complex, and often is long. It is not an easy process to manage, even for people represented by lawyers. And courts—like this one—don't act as quickly as parties would like, or even as quickly as they need. But because the factual record was not fully developed below, the court must remand to the ALJ for further proceedings.

## VI. Conclusion

The court **ORDERS** that the decision of the Commissioner is **REVERSED**. Under sentence four of 42 U.S.C. §405(g), the court will **REMAND**

33

the case to the ALJ for reassessment of the plaintiff's mental residual functional capacity, for the ALJ to advise the plaintiff on the record of his right to counsel and for consideration of the impact of the plaintiff's non-severe impairments in determining the plaintiff's physical residual functional capacity. The court also strongly urges the ALJ to engage in a clear analysis of how the plaintiff's activities of daily living impact the ALJ's consideration of the subjective symptom reports and to clarify his consideration of the plaintiff's treatment as to both his mental and physical impairments.

Dated in Milwaukee, Wisconsin this 31st day of May, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**